[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON AMENDED MOTION FOR SUMMARY JUDGMENT CT Page 10916
On September 20, 1989, the plaintiffs, Rachel Plourde and her husband Lionel Plourde, filed a four count amended complaint against the defendants, Douglas King and Joseph Gervais, the owners of 37 Inwoods Road [the premises], and Donald Syme, Ann Syme and Steven Syme, d/b/a Assurance Services, the alleged maintenance company for the premises. In their amended complaint the Plourdes allege that Rachel Plourde was injured when she slipped and fell on ice in a parking lot on the premises while leaving her place of employment, Loctite El Systems, Inc. [Loctite]. Loctite leases the premises from defendants King and Gervais [the landlords].
The Plourdes allege in count one that the landlords' negligence was the proximate cause of Rachel Plourde's injuries. Lionel Plourde alleges a loss of consortium claim against the landlords in count two. The Plourdes make the same allegations of negligence and loss of consortium against the alleged maintenance company, Assurance Services, in counts three and four, respectively.
Loctite, as an intervening plaintiff, filed an intervening complaint dated December 7, 1988, against the landlords and Assurance Services seeking reimbursement of workers' compensation benefits paid to Rachel Plourde.
On October 30, 1992, the defendant landlords filed a motion for summary judgment, together with a supporting memorandum, a copy of the lease between the landlords and Loctite, affidavits, and other supporting documents. The landlords claim, in their memorandum and affidavits, that Loctite had exclusive control and possession of the premises pursuant to the lease and Loctite was responsible for ice and snow removal on the premises.
On December 4, 1992, Loctite filed a memorandum opposition to the landlords' motion for summary judgment. Loctite claims that the landlords failed to follow practice book procedure; that the landlords failed to include an amendment to the lease and therefore the lease the landlords offered was factually incorrect; and that there is still a question as to the rights and obligations of Loctite and the CT Page 10917 landlords under the lease with respect to snow removal.
On December 11, 1992, the Plourdes filed a memorandum in opposition to the landlords' motion for summary judgment. The Plourdes argue that based on the language in the lease and the way the Plourdes phrase the allegations of their complaint, there is still a question of fact as to who possessed and controlled the area where Rachel Plourde fell.
On December 14, 1992, the court, Hennessey, J., with all parties present, allowed the landlords to mark their motion off so that they could reclaim it and add missing information regarding the lease.
On March 2, 1993, the landlords filed a motion for permission to file an amended motion for summary judgment, pursuant to Practice Book 379, which was granted by the court, Aronson, J., on March 12, 1993. The amended motion was argued at short calendar before the court, Hennessey, J., on August 16, 1993. The amended motion is similar in all respects to the original motion with one exception, a copy of the amendment to the original lease between Loctite and the landlords was submitted with the amended motion along with an affidavit attesting to the basic contents of the amendment. Neither the Plourdes nor Loctite have filed any supplemental opposition to the amended motion.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 380; Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989).
 The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.
CT Page 10918
(Citations omitted.) Dougherty v. Graham, 161 Conn. 248, 250,287 A.2d 382, 384 (1971). "The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 579,573 A.2d 699 (1990). The opposing party "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted.) Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Citations omitted.) Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,12, 459 A.2d 115 (1983). In reaching a decision on a summary judgment motion, the basic test employed by the court is whether the moving party would be entitled to a directed verdict on the same facts. See Batick v. Seymour, 186 Conn. 632,647, 443 A.2d 471 (1982).
In their supporting memorandum, the landlords argue that in order for them to be liable to the Plourdes, they must have had exclusive control and possession of the premises. "The common law of the State of Connecticut has generally upheld the proposition that the possession and control of the land, not its ownership, determine liability for any injuries incurred because of defects on the land." Fountain v. D'Addario Industries, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 261424 (December 19, 1991), citing Farlow v. Andrews Corp., 154 Conn. 220, 225,224 A.2d 546 (1966). "[I]n Farlow the court held that in order to recover damages against a landowner, a business visitor who fell on an icy sidewalk was required to prove that the landowner had possession and control of the defective area; title alone is insufficient." Id. "In the absence of a statute or covenant to the contrary, the lessor does not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the lessee." (Citations omitted.) Thomas v. Roper, 162 Conn. 343, 348,294 A.2d 321 (1972). "The word `control' has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, CT Page 10919 superintend, direct or oversee." (Citations omitted.) Panaroni v. Johnson, 158 Conn. 92, 98, 256 A.2d 246 (1969).
In the present case, the original lease and Amendment A to the lease between the landlords and Loctite contain the following pertinent sections:
Section 1.1.
 The Landlord hearby [sic] leases to the Tenant. . . a certain piece or parcel of land known as 37 Inwood Road, Rocky Hill, Connecticut, more particularly bounded and described in Exhibit A to this Lease, together with any and all improvements, appurtenances, rights, privileges and easements benefiting, belonging or pertaining thereto ("Leased Premises"). In this Lease, the building located on the Leased Premises is sometimes referred to as the "Building". Tenant in addition to the use of the demised premises shall have the use of fifteen (15) parking spaces . . . and to the extent that rear parking spaces are not used, Tenant may use those additional spaces. The portion of the building leased to Tenant consists of Ninety Six Hundred (9,600) square feet from a total building area of Seventeen Thousand Three Hundred (17,300) square feet. . . .
Section 3.6
 The Tenant shall have the exclusive possession and control of, and responsibility for, the Leased Premises and non-exclusive possession for the public ways adjacent to the Leased Premises, except as limited by this Lease.
Section 5.2 — Repairs
Tenant at Tenant's own cost will keep the CT Page 10920 premises in good order and repair, reasonable use and wear excepted. When used in this paragraph "repairs" means all interior repairs and exterior structural and nonstructural repairs to said building less than Five Hundred Dollars ($500.00) in value.
Amendment A
Section 1.1
 The Landlord hereby leases to the Tenant and the Tenant hires from the Landlord the remaining Seven Thousand Seven Hundred (7,700) square feet of area (hereinafter the "Additional Premises") in the Building for the remainder of the term of the Lease and any extension thereof. Tenant shall also have the exclusive use of all parking sites located on the Leased Premises.
The Plourdes argue that, because they did not specify where in the parking lot Rachel Plourde fell, there is a question of possession based on the language in Section 1.1 of the lease. The amended complaint states in pertinent part: "Rachel Plourde, was leaving her place of employ, Loctite El Systems, Inc., and was walking towards her motor vehicle in a parking area located at said premises, when due to an unreasonable accumulation of ice and snow upon said parking lot she was caused to fall. . . ." The Plourdes argue that the lease only gave Loctite exclusive use of fifteen parking spaces so Rachel Plourde might have fallen in an area possessed by the landlords. The Plourdes fail to address the fact that the amendment to the lease gave Loctite exclusive use of all the parking sites located on the premises. When these parking sites became part of the leased premises, Loctite came into "exclusive possession and control of, and responsibility for," the parking sites pursuant to Section 3.6 of the lease. Therefore, the Plourdes have failed to substantiate their adverse claim by demonstrating that a genuine issue of material fact remains as to who possessed the parking site in which Rachel Plourde fell. See Strada v. Connecticut Newspapers, Inc., supra. CT Page 10921
Loctite argues that there is a question of fact as to the rights and obligations of Loctite and the landlords under the lease regarding the removal of ice and snow. Loctite offers no affidavits or other documentary proof in support of this contention. The landlords argue that it was Loctite's responsibility to provide for ice and snow removal and that Loctite had exclusive control of the premises. In support of their claim, the landlords provide a copy of the lease, three affidavits, and an admission by Loctite.
The landlords' affidavits, based on their personal knowledge and the language of Section 3.6 of the lease, state the following: "The premises were in the exclusive possession and the control of the tenants. Under the lease, the tenant assumed full responsibility for the maintenance of the property and snow and ice removal." The following admission was made by Loctite in response to the landlords' request for admissions:
 7. Lampyradae Limited and/or Loctite engaged defendants, Donald Syme, Ann Syme and Steven Syme, d/b/a Assurance Services, to perform services, which included the removal of ice and snow. [Loctite response]: Lampyradae Ltd. admits it retained Donald Syme, Ann Syme and Steven Syme, d/b/a Assurance Services, to perform the above mentioned services.
 `When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant.'
Catz v. Rubenstein, 201 Conn. 39, 49, 513 A.2d 98 (1986), quoting Bartha v. Waterbury House Wrecking Co., supra, 11-12. "[T]he failure of the non-moving party to file documentary evidence in opposition to the motion for summary judgment is CT Page 10922 not deemed consent to the motion." Gagnon v. Siemiatkoski,6 CSCR 1010 (October 10, 1991, Wagner, J.); see Pepe v. New Britain, 203 Conn. 281, 287-88, 524 A.2d 629 (1987). However, it still remains "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citation omitted.) Connell v. Colwell, 214 Conn. 242, 251, 571 A.2d 116 (1990). Loctite offers no documentary proof in opposition to the landlords' claim that Loctite had exclusive control and possession, therefore, the court may rely on the affidavits and documentary proof offered by the landlords.
Pursuant to Section 3.6 of the lease between Loctite and the landlords, Loctite had "exclusive possession and control of, and responsibility for," the leased premises. The landlords may not be held liable for the Plourdes' claims because they did not have possession and control of the premises. There exists no genuine issue of material fact and the landlords are entitled to judgment as a matter of law on counts one and two of the plaintiffs' amended complaint.
Accordingly, the Motion for Summary Judgment is granted as to counts one and two of the plaintiff's Amended Complaint.
Mary R. Hennessey, Judge